IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL C. HAINES, et al. : | |
| : | |
| Plaintiffs : | CIVIL ACTION |
| : | |
| vs. : | |
| : | NO.  08-cv-5715 |
| STATE AUTO PROPERTY AND : | |
| CASUALTY INSURANCE COMPANY : | |
| : | |
| : | |
| Defendant : | |

GOLDEN, J.                                                                                                         JUNE 18, 2009

**MEMORANDUM OPINION**

Before the Court is Plaintiffs' Motion to Amend their Complaint in this action. (Doc. No. 10). For the foregoing reasons, this Motion is granted.

**PLAINTIFFS' ORIGINAL CLAIMS**

On April 25, 2004, non-party minor Steven Hohenwarter was operating a golf cart owned by Plaintiff Paul C. Haines on or near the property of Paul Haines and his wife, Plaintiff Kelly Haines (collectively, "Plaintiffs"). (Compl. ¶¶ 5-6).  Plaintiffs' son, Ryan Haines, was an occupant of the golf cart and also may have been driving the golf cart during the accident. (See id. ¶ 21; Underlying Compl. ¶ 9).  The golf cart struck and injured minor Hunter Gamble, resulting in numerous injuries. (Compl. ¶ 7).  Gamble's parents, on behalf of their son, subsequently sued Plaintiffs for negligent entrustment and sought damages for Gamble's injuries (hereinafter, the "Underlying Action"). (Id. ¶¶ 8, 21).  Plaintiffs sought coverage under a homeowners insurance policy issued by Defendant for liability arising out of this golf cart accident. (Id. ¶ 10).  Defendant refused, contending that it has no duty to either defend or indemnify Plaintiffs under the applicable homeowners insurance policy establishing coverage from

-1-

October 26, 2003 through October 26, 2004 (the "2003-2004 Policy").  (Id. ¶¶ 13, 15).[1]

Plaintiffs subsequently filed this case in the Lancaster County Court of Common Pleas alleging two causes of action: (1) declaratory relief seeking coverage under the 2003-2004 Policy (see id. ¶¶ 17-26) and (2) bad faith on the part of Defendant for failing to defend and indemnify Plaintiffs under the 2003-2004 Policy (see id. ¶ 30).  Defendant removed this action to this Court on December 8, 2008.  (Doc. No. 1).

## PLAINTIFFS' PROPOSED CLAIMS

Plaintiffs' Proposed Amended Complaint contends that a previously issued policy establishing coverage from October 26, 2002 through October 26, 2003 (the "2002-2003 Policy") applies to the April 25, 2004 accident—not the 2003-2004 Policy—because the 2002-2003 Policy represents Plaintiffs' reasonable expectations of coverage.  (Pls.' Reply Br. at 5).  Plaintiffs specifically allege that the 2002-2003 Policy applies because Defendant "fail[ed] to inform and notify the Plaintiffs of" material changes altering coverage from the 2002-2003 Policy to the 2003-2004 Policy.  (Proposed Am. Compl. ¶¶ 24-29, 32, 43).

**I.     The 2002-2003 Policy**

Plaintiffs argue that the April 25, 2004 accident would have been covered under the 2002-2003 Policy, which—according to Plaintiffs—has a more expansive exception to the exclusion precluding

---

[1] Defendant informed Plaintiffs (and Defendant still contends) that coverage does not exist under the 2003-2004 Policy because the golf cart was not used "solely to service an 'insured's' residence."  (Compl. ¶ 16; Def.'s Answer ¶ 25).  The 2003-2004 Policy contains a general "motor vehicle liability" exclusion barring coverage for occurrences involving motor vehicles.  (2003-2004 Policy, Exclusions, Sec. A.1).  The 2003-2004 Policy provides an exception to this exclusion provision, stating that coverage exists for motor vehicle liability if the motor vehicle is "[u]sed to service an 'insured's' residence."  (2003-2004 Policy, Exclusions, Sec. A.2.b, Fl 261 Policy Endorsement, Sept. 11, 2008 Letter to Pls. from Def.).  This exception to the "motor vehicle liability" exclusion providing for coverage, however, does not apply to "recreational vehicles"—including golf carts—unless these vehicles are "used *solely* to service the 'residence premises.'"  (Id.) (emphasis added).  Plaintiffs dispute Defendant's coverage determination and allege that, at the time of the accident, the golf cart was "in the service" of Plaintiffs' premises, thereby establishing coverage under the 2003-2004 Policy.  (Compl. ¶ 26).

coverage for loss arising out of motor vehicle liability.  (Id. ¶ 23).  According to Plaintiffs' Proposed Amended Complaint, the 2002-2003 Policy contains a motor vehicle exclusion that precludes coverage for liability arising out of the "ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an 'insured.'"  (Id. ¶ 21).  This exclusion does not apply to "a motorized land conveyance vehicle designed for recreational use off public roads" that is owned by the insured and *on an "insured location."*  (Id.).  Under this 2002-2003 Policy, an "insured location" includes, among other things, "any premises used by you in connection with [the insured's residence] premises," which Plaintiffs argue broadens this exception to the motor vehicle liability exclusion.  (Id. ¶ 20; Pls.' Br. at 2).  Plaintiffs' theory is apparently that the April 25, 2004 accident would be covered under the 2002-2003 Policy because, since the accident occurred in an alley near or adjacent to Plaintiffs' property, the golf cart in question was on a premises used by Plaintiffs in connection with their residence premises.  (Def.'s Sur-Reply Br. at 1 n.1).

## II.    The 2003-2004 Policy

Plaintiffs contend that the 2003-2004 Policy materially amended coverage to the detriment of Plaintiffs and contrary to Plaintiffs' reasonable expectations.  (Proposed Am. Compl. ¶¶ 23-24, 26; Pls.' Mot. ¶ 4).  Similar to the 2002-2003 Policy, the "motor vehicle liability" exclusion in the 2003-2004 Policy does not bar coverage if the motor vehicle is designed for recreational use off public roads and owned by the insured, and the occurrence takes place *on an "insured location."*  (2003-2004 Policy, Exclusions, Sec. A.2.d; Proposed Am. Compl. ¶¶ 30-31).  However, the 2003-2004 Policy does not include the definition of "insured location" that existed in the 2002-2003 Policy—namely, the language, "any premises used by you in connection with [the insured's residence] premises"—thereby, according to Plaintiffs, narrowing the coverage exception to the "motor vehicle liability" exclusion.

(Proposed Am. Compl. ¶¶ 30-31).

Plaintiffs' Proposed Amended Complaint now alleges the following three causes of action against Defendant: (1) declaratory relief seeking coverage under the 2002-2003 Policy (see id. ¶¶ 32, 43); (2) bad faith on the part of Defendant for failing to defend and indemnify Plaintiffs under the 2002-2003 Policy (see id. ¶¶ 47.a, 48); and (3) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (see id. ¶¶ 51-54).

## STANDARD

Rule 15 of the Federal Rules of Civil Procedure states that leave to file an amended complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A party generally should be permitted to amend a complaint where if it did so it could state a claim." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 309 (3d Cir. 2003). "Amendment, however, is not automatic." Butz v. Lawns Unlimited Ltd., 568 F. Supp. 2d 468, 479 (D. Del. 2008). A district court may exercise its discretion to deny the request "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2004); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). In applying that standard, the Court is mindful of the Third Circuit's teaching that the exercise of discretion should comport with the liberal approach to amendment embodied in the judicial interpretation of Rule 15. See Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 887 (3d Cir. 1992).

## FUTILITY ANALYSIS

Defendant contends that leave to amend should be denied because the three proposed claims asserted by Plaintiffs are futile. (Def.'s Br. at 1). "Futility" means that "the complaint, as amended,

would fail to state a claim upon which relief could be granted." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004) (internal quotations omitted). Thus, in assessing "futility," the district court applies the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). Id. at 153-54. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50, 1953 (2009) (internal quotations omitted) (holding that the pleading standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) applies to "all civil actions" and noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Thus, amendment should be denied when it is "beyond doubt that the plaintiff can prove no set of facts in support of his [new] claim[s] which would entitle him to relief." See Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); see also Achey v. Crete Carrier Corp., No. 07-3592, 2009 WL 101843, at *3 (E.D. Pa. Jan. 14, 2009).

I.       **Proposed Count One: Claim for Declaratory Relief**

Plaintiffs' proposed claim in Count One asserts that the 2002-2003 Policy—rather than the 2003-2004 Policy—both applies to and provides coverage for the April 25, 2004 golf cart accident. (Proposed Am. Compl. ¶¶ 23, 32, 43). Plaintiffs argue that Defendant unilaterally added language to the 2003-2004 Policy that narrowed the scope of the exception to the "motor vehicle liability" exclusion—language that, it is alleged, materially altered coverage for the April 25, 2004 golf cart accident. (Pls.' Reply Br. at 3; Proposed Am. Compl. ¶¶ 32, 43). Plaintiffs contend that any notification they received of this change was inadequate; therefore, the added exclusion language in the 2003-2004 Policy is unenforceable. (Proposed Am. Compl. ¶ 43). Accordingly, Plaintiffs assert that

they had a "reasonable expectation" of coverage for the conduct alleged in the Underlying Action based on Plaintiffs' review of the 2002-2003 Policy's language when the golf cart was purchased. (Pls.' Reply Br. at 4). The applicability and application of the so-called "reasonable expectations" doctrine is the central issue addressed in Plaintiffs' Motion to Amend and Defendant's opposition thereto.

Where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). However, in certain circumstances, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express language of the insurance policy. See Pressley v. Travelers Prop. Cas. Corp., 817 A.2d 1131, 1139-40 (Pa. Super. Ct. 2003). Pennsylvania courts have often emphasized the importance of the insured's reasonable expectation of coverage. See, e.g., Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997) ("[T]he proper focus for determining issues of insurance coverage is the reasonable expectations of the insured."). This reasonable expectations doctrine is only applied "in very limited circumstances" to protect non-commercial insureds from both deception and policy terms not readily apparent. Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005).

The reasonable expectations doctrine was embedded in Pennsylvania law by the Pennsylvania Supreme Court in Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920 (Pa. 1987). There, the Court held that, where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." Id. at 925-26. The Tonkovic Court made clear that the "burden is not on the insured to read the policy to discover . . . changes." See id. at 925.

Tonkovic and its progeny have been interpreted to mean that, "[a]n analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured, either to misrepresent the terms of the policy or to issue a policy different than the one requested by the insured and promised by the insurer." West v. Lincoln Benefit Life Co., 509 F.3d 160, 169 (3d Cir. 2007) (synthesizing reasonable expectations case law and describing this synthesis as the "truest statement of Pennsylvania law").  Indeed, "[i]n the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy, the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured."  Id. at 168-69; see also Matcon Diamond, Inc. v. Penn Nat'l Ins. Co., 815 A.2d 1109, 1114-15 (Pa. Super. Ct. 2003) ("[M]ere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage.").

For example, in Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1311-12 (3d Cir. 1994), the Third Circuit Court of Appeals held that an added exclusion would not be enforced where the insured was aware of a change in policy language and the insurer made some representation that coverage would not be reduced, or where the insured renewed the policy and the insurer failed to inform the insured of any changes and explain their significance.  See also Highlands Ins. Group v. Van Buskirk, No. 98-4847, 2000 WL 1659918, at *5 (E.D. Pa. Oct. 1, 2000) (explaining Bensalem), aff'd, 281 F.3d 221 (3d Cir. 2001).  In Bensalem, the plaintiff insured Township filed a declaratory judgment action seeking coverage.  Bensalem, 38 F.3d at 1305.  The Township alleged that the insurer defendants made a unilateral change in the insurance policy by adding language expanding the scope of a particular exclusion.  Id.  The Township argued that the new language added to the exclusion clause during a policy renewal was inconsistent with its reasonable expectations, as the Township believed that coverage would essentially be the same as under the previous policy.  Id.  The district court granted

the insurer defendants' motion to dismiss, concluding that the underlying lawsuit fell within the express terms of the modified exclusion in the policy.  Id.  The Third Circuit Court of Appeals reversed, holding that discovery was necessary for the Township "to demonstrate that Insurers did not change the language of the exclusion until after it had agreed to renew its policy with Insurers, and that Insurers either did not notify Township of the change in the exclusion or did not explain the significance of the change."  Bensalem, 38 F.3d at 1312.  In sum, the Third Circuit concluded that the district court "should have allowed discovery to enable it to review the circumstances surrounding the insurance agreement in order to determine whether Township might have had a reasonable expectation of coverage in this situation despite the language of the policy."  Id.

      Here, the Court concludes that, as in Bensalem, it would be premature to deem Plaintiffs' new coverage claim futile.  When Plaintiffs filed their Motion to Amend, discovery had not yet been completed, and Plaintiffs may be able (and may have been able to) marshal evidence that Defendant engaged in deceptive practices by either misrepresenting the terms of the policy or issuing a policy different than the one requested by Plaintiffs and promised by Defendant—a threshold showing which may trigger the application of the 2002-2003 Policy as an indicator of Plaintiffs' reasonable expectations of coverage.  See West, 509 F.3d at 169.  The Court cannot conclude that it is "beyond doubt" that Plaintiffs will not be able to establish an "affirmative misrepresentation" by Defendant.  See Johnsrud, 620 F.2d at 33; West, 509 F.3d at 169.  Because such a showing is fact-intensive and can be inferred from the allegations in the Proposed Amended Complaint, it cannot be said that there is no potential for coverage based on the 2002-2003 Policy.  See Dibble v. Sec. of Am. Life Ins. Co., 590 A.2d 352, 354 (Pa. Super. Ct. 1991) ("Courts must examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured.").  As one court has concluded, the "[a]pplication of the reasonable expectations doctrine is a fact-intensive inquiry inappropriate for

resolution in a motion to dismiss." See Ross v. Metro. Life Ins. Co., 411 F. Supp. 2d 571, 582 (W.D. Pa. 2006). The Court agrees.[2]

Moreover, Defendant's argument that the principle articulated in Tonkovic does not apply because the added language to the "motor vehicle liability" exclusion in the 2003-2004 Policy did not "materially alter" Plaintiffs' homeowners policy is to no avail under Rule 15's liberal standard for amendment. (Def.'s Br. at 3-4). Defendant specifically relies on the fact that the Tonkovic Court found "a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy *quite different* from what the insured requested, and cases where the insured received *precisely the coverage that he requested* but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." Tonkovic, 521 A.2d at 925 (emphasis added). In its papers, Defendant parses the differences in language between the 2002-2003 Policy and the 2003-2004 Policy—namely, the modified definition of "insured location"—and contends that there was not a significant alteration in the nature of the homeowners coverage issued to Plaintiffs sufficient to justify the application of Tonkovic's reasonable expectations doctrine. (Def.'s Br. at 3-5). While this may be the case, the Court will not address at this stage whether the Tonkovic principle applies as a matter of law based on the differences in how the term "insured location" is defined between the 2002-2003 and 2003-2004 homeowners policies. Such a

---

[2] Despite Defendant's contention, Plaintiffs need not at this stage of the litigation produce actual evidence of an affirmative representation by an agent of Defendant that coverage would apply. (See Def.'s Sur-Reply Br. at 2). A complaint "need not plead law or match facts to every element of a legal theory" because the purpose of allegations laid out in a complaint is to give the defendant fair notice of the plaintiff's claims and the grounds on which they rest. See Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001) (citations omitted); see also Fed. R. Civ. P. 8(a)(2). The Court will also not examine the affidavit produced by Defendant of a Personal Insurance Product Manager employed by Defendant stating that proper notice was given to Plaintiffs. (Def.'s Ex. A). Nor will the Court assess the adequacy of any policy change notices provided by Defendant to Plaintiffs. See Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004) ("It is black-letter law that [a] motion to dismiss for failure to state a claim . . . is to be evaluated only on the pleadings.") (internal quotation omitted); Berry v. Klem, 283 F. App'x 1, 4 (3d Cir. 2008) ("[D]eclarations are evidentiary materials that cannot be considered on a motion to dismiss.").

question would best be addressed in a motion for summary judgment.  See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (stating that, in considering a Rule 12(b)(6) motion, a Court shall not inquire into "whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims").  Simply put, Plaintiffs' specific allegations regarding Defendant's conduct, along with the reasonable inference of deceptive practices derived therefrom, sufficiently state a claim for coverage such that the new declaratory judgment claim in Count One cannot be considered futile.

## II.     Proposed Count Two: Bad Faith

Defendant further contends that Plaintiffs fail to state a claim for statutory bad faith, see 42 Pa. Cons Stat. Ann. § 8371, in Count Two of the Proposed Amended Complaint and, therefore, such a claim is futile.  (Def.'s Br. 5-6).  Defendant interprets Plaintiffs' bad faith claim as focusing on Defendant's alleged failure to provide notification to Plaintiffs of the change in policy language from the 2002-2003 Policy to the 2003-2004 Policy.  (Id.).  Contending that Pennsylvania's bad faith statute "applies only to conduct in connection with the handling of claims brought under an insurance policy," Defendant concludes that—to the extent that Defendant's alleged failure to provide notification of the change in policy language itself provides the basis for Plaintiffs' bad faith claim—Plaintiffs' Motion to Amend must be denied.  (Id.).

"Bad faith" on the part of an insurer has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent."  Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), appeal denied, 659 A.2d 560 (Pa. 1995).  "For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."  Id.  "Bad faith"

concerns "the duty of good faith and fair dealing in the parties' contract and *the manner by which an insurer discharged its obligations of defense and indemnification* in the third-party claim context or its obligation to pay for a loss in the first party claim context." Toy v. Metro. Life Ins. Co., 928 A.2d 186, 199 (Pa. 2007) (emphasis added). "In other words, the term ['bad faith'] capture[s] those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract." Id. at 199-200 (holding that there is no relief under Pennsylvania's bad faith statute for allegations that an insurer "engaged in unfair or deceptive practices in soliciting the purchase [of] a policy").

Based on the allegations in the Proposed Amended Complaint, Plaintiffs' bad faith claim does not rely exclusively on Defendant's alleged failure to provide notice of policy changes. Rather, Plaintiffs' theory of bad faith appears to be that (a) based on Defendant's alleged improper notification, the 2002-2003 Policy now applies because it represents Plaintiffs' reasonable expectations of coverage and (b) based on the provisions of the 2002-2003 Policy, Defendant has engaged in a frivolous or unfounded refusal to provide coverage for the April 25, 2004 accident. (Proposed Am. Compl. ¶¶ 32, 43, 47.a, 48; Pls.' Reply Br. at 2). This is sufficient to allege a bad faith claim and, accordingly, it cannot be said that this proposed count is futile. See Electrographics Int'l Corp. v. Fed. Ins. Co., No. 98-3220, 1998 WL 646831, at *2 (E.D. Pa. Sept. 21, 1998) (noting that defendant insurer's motion to dismiss plaintiff's bad faith claim was "premature," as "the arguments therein [would be] better addressed in a summary judgment motion after the parties have engaged in discovery").

### III. Proposed Count Three: Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Count Three of Plaintiffs' Proposed Amended Complaint alleges violations of Pennsylvania's

Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  The UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the statute.  73 Pa. Cons. Stat. Ann. § 201-9.2(a).  The statute's underlying purpose is fraud prevention and Pennsylvania courts have construed the UTPCPL liberally to effectuate this purpose.  See Commonwealth by Creamer v. Monumental Props., Inc., 329 A.2d 812, 816 (Pa. 1974); Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. Super. Ct. 1999).  Plaintiffs contend that Defendant violated the UTPCPL's catch-all provision, which includes as unfair or deceptive acts or practices "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  See 73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi); (Proposed Am. Compl. ¶ 52).[3]

---

[3] Though not addressed by the parties, there is a legal question in this case as to whether Plaintiffs must prove all the elements of common law fraud to establish a violation under the UTPCPL's catch-all provision.  As one court has stated, "the requirements for fraud under the catchall provision are in flux in Pennsylvania state and federal courts."  See Chiles v. Ameriquest Mortgage Co., 551 F. Supp. 2d 393, 398 (E.D. Pa. 2008).

There is case law stating that, "[i]n order to establish a violation of this catchall provision, 'a plaintiff must prove all of the elements of common-law fraud.'"  See Colaizzi v. Beck, 895 A.2d 36, 39 (Pa. Super. Ct. 2006) (citing Sewak v. Lockhart, 699 A.2d 755, 761 (Pa. Super. Ct.1997)); see also Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 567-68 (M.D. Pa. 2008) (dismissing UTPCPL claim at Rule 12(b)(6) stage because plaintiff "has not stated a common-law fraud claim, and therefore, her allegations do not state a claim under the catchall provision of the" UTPCPL); Skurnowicz v. Lucci, 798 A.2d 788, 794 (Pa. Super. Ct. 2002).  To establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.  Rizzo v. Michener, 584 A.2d 973, 980 (Pa. Super. Ct. 1990), appeal denied, 596 A.2d 159 (Pa. 1991).  Under both federal and Pennsylvania rules, fraud must be plead with particularity.  See Fed. R. Civ. P. 9(b); Pa. R. Civ. P. 1019(b).

However, any requirement that a plaintiff must allege and prove the elements of common law fraud to establish a violation under the UTPCPL's catch-all provision has either been called into question or explicitly rejected by other courts.  For example, in Schwartz v. Rockey, 932 A.2d 885, 898 (Pa. 2007), the Pennsylvania Supreme Court held that, as a matter of statutory construction, "the courts' discretion to [award] treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages."  Additionally, Judge Juan R. Sanchez of this Court has noted that Colaizzi cited Sewak for the proposition that "a plaintiff must prove all of the elements of common-law fraud," but Sewak "was filed in 1994 and analyzed the former version of the UTPCPL which did not include 'deceptive practices,' added by amendment in 1996."  See Cohen v. Chicago Title Ins. Co., 242 F.R.D. 295, 301 (E.D. Pa. 2007).  As a result, according to Judge Sanchez, "[t]he [Pennsylvania] legislature's amendment to the statute affirms the position of the Pennsylvania Supreme Court [that] consumer protection laws must be liberally interpreted."  See id.  Other courts have similarly rejected the notion that common law fraud must be alleged and proven to establish a claim

In the insurance context, "only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UPTCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995) (internal citations omitted). "Misfeasance requires affirmative conduct, such as an act of misrepresentation or deception, or a reckless mistake made." Baer v. Hartford Mut. Ins. Co., No. 05-1346, 2005 WL 3054354, at *7 (E.D. Pa. Nov. 14, 2005). The failure of an insurer to pay the proceeds of an insurance policy is nonfeasance and thus is not actionable. Millwood v. State Farm Mut. Auto. Ins. Co., 08-1698, 2009 WL 291168, at *3 (E.D. Pa. Feb. 5, 2009). Defendant claims that Plaintiffs' proposed UTPCPL claim is futile because it only alleges nonfeasance. (Def.'s Br. at 6).

Contrary to Defendant's contention, Plaintiffs have alleged more than Defendant's mere refusal to indemnify and defend Plaintiffs based on the reasonable expectations of Plaintiffs as stated in the 2002-2003 Policy. Plaintiffs' core claim under the UTPCPL is that Defendant deceptively failed to notify Plaintiffs of material policy changes that impacted coverage for the April 25, 2004 golf cart accident. (Proposed Am. Compl. ¶¶ 24-29). Furthermore, according to Plaintiffs, any notice received by Plaintiffs of policy language changes deceptively created a "likelihood of confusion or of

---

under the UTPCPL's catch-all provision. See, e.g., Chiles, 551 F. Supp. 2d at 398; Mertz v. Donzi Marine, Inc., No. 04-55, 2007 WL 710263, at *11 (W.D. Pa. Mar. 6, 2007); Commonwealth v. Manson, 903 A.2d 69, 73-74 (Pa. Commw. Ct. 2006); Christopher v. First Mut. Corp., No 05-1149, 2006 WL 166566, *2-3 (E.D. Pa. Jan. 20, 2006); see also Cehula v. Janus Distribs., LLC, No. 07-113, 2008 WL 2890874, at *5 (W.D. Pa. July 23, 2008) (noting that, despite these conflicting standards, a plaintiff "still must demonstrate the requirements of any claim brought under the [UTPCPL], as espoused by the Pennsylvania Supreme Court: (1) that the Defendant made a false misrepresentation; (2) which the Plaintiffs justifiably relied upon; and (3) suffered loss as a result of such reliance"), reconsideration denied, 2008 WL 3925934 (W.D. Pa. Aug. 21, 2008).

For the purposes of evaluating Plaintiffs' Motion for Leave to Amend their Complaint, the Court will assume, without deciding, that common law fraud need not be alleged to state a claim under the UTPCPL's catch-all provision. To the extent the parties deem it appropriate, the parties may address this legal question during the summary judgment stage of this litigation.

misunderstanding" as to what conduct was covered under the applicable homeowners policy. (Id. ¶ 52; Pls.' Reply Br. at 6). Based on these allegations, the Court concludes that Plaintiffs have met the minimal threshold of alleging acts that, if shown to have occurred, could constitute misfeasance rather than nonfeasance. Accordingly, Plaintiffs' UTPCPL claim is not futile. See, e.g., Cohen v. Ohio Cas. Group, 07-1620, 2009 WL 586123, at *5 (W.D. Pa. Mar. 6, 2009) (denying motion to dismiss UTPCPL claim where "Plaintiffs have alleged more than the mere refusal to pay their claim"); Millwood, 2009 WL 291168, at *4 (plaintiffs who alleged, among other things, that defendant used "dilatory handling," engaged "in unreasonable evaluation practices," and "conducted its post-loss investigation [in] an unfair, nonobjective, biased, reckless and outrageous manner" stated a claim under UTPCPL); Amitia v. Nationwide Mut. Ins. Co., No. 08-335, 2009 WL 111578, at *2 (M.D. Pa. Jan. 15, 2009) (plaintiffs, who alleged defendant failed to evaluate their claim "promptly, objectively, and fairly" and conducted an "unfair, unreasonable, and dilatory investigation," stated a claim under UTPCPL); see also Lites v. Great Am. Ins. Co., No. 00-525, 2000 WL 875698, at *3-5 (E.D. Pa. June 23, 2000) (noting difference in reviewing UTPCPL claim at motion to dismiss stage versus summary judgment stage).

    An appropriate Order will be docketed.