IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL C. HAINES, et al. | : | |
| Plaintiffs | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 08-CV-5715 |
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY | : | |
| Defendant | : | |

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                                                     March 24, 2010

**I. Introduction**

Before the Court are the parties cross-motions for summary judgment. Plaintiffs Paul, Kelly and Ryan Haines ("the Haines") seek a declaratory judgment that Defendant State Auto Property and Casualty Insurance Company ("State Auto") owes a duty to defend and indemnify them in an underlying negligence, concert of action and negligent entrustment case in the Lancaster County Court of Common Pleas. They also assert a claim for bad faith, and for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendant State Auto seeks a declaratory judgment that no coverage exists, and that it does not owe either a duty to defend or a duty to indemnify Plaintiffs in the underlying action. State Auto also seeks summary judgment in its favor on Plaintiffs' bad faith and UTPCPL claims. For the foregoing reasons, summary judgment is granted in favor of Defendant State Auto, and against Plaintiffs, as to all claims.

## II. Legal Standard

Summary judgment should be granted if the record, including pleadings, depositions, affidavits and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. See also *Sommer v. The Vanguard Group*, 461 F.3d 397, 403-04 (3d Cir. 2006).

This matter is before the Court on the basis of diversity jurisdiction. The Court is therefore obligated to apply the substantive law of Pennsylvania. *Nationwide Mut. Ins. Cas. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). Interpretation of an insurance policy is a matter of law properly resolved through a declaratory judgment action. *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 925 (Pa. Super. Ct. 2004). The Court must give effect to an insurance policy's unambiguous language. *Standard Venetian Blind v. American Empire Ins.*, 469 A.2d 563, 566 (Pa. 1983). Any ambiguous language, however, must be construed against the insurer, as the drafter of the policy. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1093 (E.D. Pa. 1994).

## III. Factual Background

The material facts of this case are not in dispute. Plaintiffs were sued for negligence, concert of action and negligent entrustment in the Court of Common Pleas of Lancaster County

on August 18, 2008, by their neighbors Spencer and Dawn Gamble, on behalf of their minor child. (Joint Stip. of Undisputed Facts, ¶ 15). The suit stems from an April 2004 accident in which the Gamble's son, Hunter, was struck and injured by a golf cart owned by the Haines and allegedly operated by a friend of Ryan Haines. (*Id.* at ¶¶ 7, 8). The accident took place in an alley behind Plaintiffs' neighbors' garage in Salunga, Lancaster County. (*Id.* at ¶ 14). The alley is paved, and maintained by the Township. (Haines Dep. 32).[1] The Haines filed a claim with State Auto, with whom they have had a homeowner's policy since the late 1980's, seeking defense and indemnification in the underlying action. (Haines Dep. 38; Joint Stip. of Undisputed Facts at ¶ 17). On September 11, 2008, State Auto sent Plaintiffs a reservation of rights letter. On October 14, 2008, State Auto made a determination that coverage did not exist, and sent another letter to that effect. (*Id.* at ¶ 18).

Mr. Haines initially purchased the golf cart in question in 2002. (Haines Dep. 47). The cart was driven in the alley behind Plaintiffs' home (and neighboring properties), and in a nearby farmer's field. (Haines Dep. 53). Mr. Haines testified that it was used approximately one-third of the time for planting flowers and fetching sodas from a nearby vending machine, and two-thirds of the time for the entertainment of his children and their friends. (Haines Dep. 54).

### III. The Policies at Issue

Plaintiffs argue that both the 2003 and 2002 versions of their homeowner's insurance policy provide coverage for the accident. Plaintiffs also assert that, under the reasonable expectations doctrine, they are entitled to invoke the 2002 policy to find coverage, although the 2003 policy was in effect at the time of the accident.

---

[1] This abbreviation refers to the deposition testimony of Plaintiff Paul Haines.

Both policies include an exclusion for motor vehicle liability. The 2003 policy provides an exception to this exclusion if the motor vehicle is "[u]sed solely to service an 'insured's' residence" or is "[d]esigned for recreational use off public roads and:...(2) [o]wned by an 'insured' provided the 'occurrence' takes place on an 'insured location.'"

The 2002 policy provides an exception to the motor vehicle exclusion for a "motorized land conveyance designed for recreational use off public roads" that is "owned by an insured and on an insured location." The next line after the exception for a "motorized land conveyance" describes an exception for a golf cart, when used to play golf on a golf course.

The two policies differ in that the 2002 version has a broader definition of the term "insured location," as applied in the exceptions to the motor vehicle exclusion. In 2002, the applicable definition of "insured location" used in the exception for a motorized land conveyance included "any premises used by you in connection with" the residence premises and other structures and grounds that are part of the residence. The 2003 policy eliminated the clause encompassing "any premises used by you in connection with" the residence premises from the definition of "insured location" applicable to a motor vehicle designed for recreational use off public roads

## IV. The Duty to Defend under the 2003 Policy

Plaintiffs argue that Defendant's obligation to defend is fixed solely by the allegations within the underlying complaint. Plaintiffs argue that, because the underlying complaint in this action did not indicate that the golf cart was not used "solely to service" the residence, or that the accident took place off of "an insured location," State Auto has a duty to defend them under the 2003 policy. Plaintiffs are correct that the underlying complaint, which contains straightforward

4

allegations of negligence, does not include details about the Haines family's use of the golf cart or the precise location of the accident.

State Auto sent investigators to interview members of the Haines family about the accident involving Hunter Gamble and the golf cart. Following the interviews, State Auto concluded that, because the golf cart was being used for "play or joy riding in a nearby alley way" during the accident, rather than "to service the residence premises," the policy provided no coverage. (Def.'s Br. in Supp. of Mot., Exh. G). Plaintiffs submit that State Auto improperly relied on information developed during interviews to deny coverage, when Pennsylvania law requires that an insurer consider only the allegations in the complaint itself.

Under Pennsylvania law, an insurer has a duty to defend "if the factual allegations of a complaint on its face comprehend an injury which is actually or potentially within the scope of the policy." *Erie Ins. Exchange*, 851 A.2d at 926 (internal citations omitted). Plaintiffs' assertion that an insurer is prohibited from investigating whether coverage exists runs counter to authority recognizing that the duty to defend does not last indefinitely, or regardless of the facts elucidated as the case progresses. The duty to defend only lasts "until such time as the claim is confined to a recovery that the policy does not cover." *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1369 (Pa. 1987). For example, the Third Circuit, with then-Judge Alito writing, noted with approval an insurer's conduct of an "initial investigation" to determine whether coverage existed. *Northern Ins. Co. v. Aardvark Assoc.*, 942 F.2d 189, 196 (3d Cir. 1991).

It is true, and noted in cases that Plaintiffs cite, that "it is the face of the complaint and not the truth of the facts alleged therein" which establishes the duty to defend. *D'Auria v. Zurich*

5

*Ins. Co.*, 352 Pa. Super 231, 235 (1986). For example, in *Kvaerner*, the Pennsylvania Supreme Court held that it was improper for both plaintiff and the Superior Court to have looked beyond the underlying complaint and considered expert reports to determine possible causes of the loss for which plaintiff made its insurance claim, when such causes were not included in the underlying complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 329 (2006).

The *Kvaerner* plaintiff had provided a coke oven battery to Bethlehem Steel; when the battery proved defective, Bethlehem Steel sued for breach of contract and breach of warranty. *Id* at 321-322. Kvaerner sought coverage for its defense and indemnity from National Union, its insurance carrier; National disclaimed coverage, reasoning that its policy only covered "occurrences" (defined as accidents under the policy), and Bethlehem Steel had not alleged in its complaint that an accident occurred. *Id.* at 324. Kvaerner submitted an expert report to the Court opining that the damage to the battery might have been caused by torrential rains. *Id.* at 325. Reversing the judgment of the trial court in favor of the insurer, the Superior Court reviewed the expert report and concluded that because the rains might have been the cause of the damage to the battery, there might have been an occurrence triggering coverage under the policy. *Id.* at 327. The Supreme Court rejected the Superior Court's decision to look beyond the four corners of the complaint. *Id.* at 331.

*Kvaerner* stands for the proposition that the decision to confer or deny insurance coverage cannot be based on a party's or court's investigation into the merits or truth of the underlying complaint against the insured. In the instant case, State Auto did not undertake such an investigation; its denial of coverage did not reflect a determination regarding the truth or falsity

of the allegations of negligence made against members of the Haines family. Instead, State Auto made inquiries into discrete details of the accident–where it took place, and what kind of vehicle was involved. The Court rejects Plaintiffs' argument that State Auto had a duty to defend because the underlying complaint failed to include these details, wholly unrelated to the merits of the underlying claim, which would determine coverage.

Moreover, if the facts in the underlying complaint fall within a policy exclusion, the insurer has no duty to defend. *Air Prods. & Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994). The burden is then on the insured to introduce extrinsic evidence that the facts of a complaint actually fall within an exception to a policy exclusion. *Id.*

In the instant case, the accident described in the underlying complaint clearly falls within the policies' exclusions for motor vehicle liability, as neither party disputes that the golf cart is a motor vehicle. It is up to Plaintiffs to produce extrinsic evidence that an exception to the policy's general exclusion for motor vehicle liability applies. Plaintiffs do not provide evidence or otherwise argue that the accident actually took place on an insured location as defined under the 2003 policy. Plaintiffs do argue that the golf cart was used to service their property, but the Court rejects this argument for the reasons discussed below.

**A. The Vehicle Was Not Used Solely to Service the Insured Location.**

Plaintiff Paul Haines testified that the golf cart involved in the underlying accident was used, two-thirds of the time, for recreation. Plaintiffs argue that recreation should be interpreted as a way for a vehicle "to service" the Haines' home, and thus that the golf cart falls within the exception to the policy's motor vehicle exclusion for vehicles used solely to service an insured's residence. The Superior Court of Pennsylvania has concluded, however, that a vehicle used for

7

recreation is not used "solely for the service of an insured location." *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 629 (Pa. Super. Ct. 1998).[2] In *Tenos*, a homeowner made a claim when his ATVs, which were primarily used for recreation, were stolen. *Id.* at 628. The homeowner's policy under which he made his claim included an exception to a motor vehicle exclusion clause for vehicles "used solely for the service of the insured location." *Id.* Remanding the case for entry of summary judgment in favor of the insurer, the Superior Court concluded that "the plain, ordinary and everyday meaning of the term "service" simply does not conjure thoughts of recreation." *Id.* at 629.[3] This Court agrees with the judgment of the Superior Court; by using the golf cart for recreation, Plaintiffs did not "service" their property, and the cited policy exception to the exclusion does not apply.

## V. The 2002 Policy and the Reasonable Expectations Doctrine

Having concluded that Plaintiffs were not covered under the 2003 policy, the Court turns to Plaintiffs' arguments that they had a reasonable expectation of coverage based on the terms of their 2002 policy. The 2002 policy differs from the 2003 policy in that it includes a broader definition of the term "insured location" as applied in the exception to the motor vehicle exclusion. Under the 2002 policy, an "insured location" included "any premises used by you in connection with" the residence premises. Upon review of the parties' briefs, the Court concludes that Plaintiffs did not have coverage under the 2002 policy, and could not have developed a

---

[2] Although the Court is not required to adopt the holdings of the Commonwealth's intermediate courts, it must look to those courts' decisions for guidance in interpreting state law, unless it is "convinced by other persuasive data that the highest court of the state would decide otherwise. *Northern Ins. Co.*, 942 F.2d at 193.

[3] Plaintiffs urge the Court to adopt the *Tenos* dissent of Judge Del Sole, who noted that, as used in the *Tenos* policy, the word "service" was a noun and not a verb. *Id.* at 632. Thus, the dissent argues, the word "service" could be interpreted as a synonym for transportation, as in "bus service." *Id.* In the Haines' policy, however, the word "service" is clearly a verb. Judge Del Sole's reasoning would not apply here.

8

reasonable expectation of coverage by relying on the 2002 policy.

The reasonable expectations of the parties to an insurance contract are generally determined by the language of the contract itself. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997). Courts are also instructed to look at the totality of the circumstances of the insurance transaction in determining what the insured's reasonable expectations might be. *Id.* The Court has a duty to assure that the "insurance purchasing public's reasonable expectations are fulfilled." *Tonkovic v. State Farm Mut. Auto Ins. Co.*, 521 A.2d 920, 926 (Pa. 1987) (internal citations omitted). The reasonable expectations doctrine developed in recognition of the fact that the words of an insurance contract may not always reflect the intent or understanding of the parties. *Highlands Ins. Group v. Van Buskirk*, US Dist LEXIS 16008, at *10 (E.D. Pa. Oct. 31, 2000).

The doctrine only applies, however, when a consumer's expectations of coverage are reasonable. As the Pennsylvania Superior Court has explained,

> [a]ny reasonable expectation which would be imputed to the parties by this or any court must necessarily rely upon, and be reasonably consistent with, the written document and phraseology, simply because any interpretation advanced contrary to the contents of the written document could hardly be viewed as "reasonable" to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology.

*J.H. France Refractories Co. v. Allstate Ins. Co.*, 578 A.2d 468, 472 (Pa. Super. Ct. 1990). In this case, the Court concludes that Plaintiffs could not have developed a reasonable expectation of coverage by relying on an exception to the motor vehicle exclusion for a "motorized land conveyance designed for recreational use off public roads ... and: (2) [o]wned by an insured and on an insured location." Plaintiffs would not have been covered under the 2002 version of the

policy for two reasons.

First, the exception for a "motorized land conveyance" is immediately followed by an additional, separate exception applicable only to golf carts. The golf cart exception to the motor vehicle exclusion applies to "a motorized golf cart when used to play golf on a golf course." It is a basic rule of contract construction that when there is a conflict between a specific provision and a general provision, the specific contract provision prevails. *A.G. Cullen Construction, Inc. v. State Sys. of Higher Educ.*, 898 A.2d 1145, 1169 (Pa. Commw. 2006). In the simplest terms, an insured reviewing the 2002 policy would note that State Auto said "golf cart" when it meant "golf cart." Knowing that they did not qualify for coverage under the clear exception provided for golf carts, Plaintiffs could not develop a reasonable expectation of coverage from the less specific exception for a "motorized land conveyance."[4]

Moreover, Plaintiffs could not have developed a reasonable expectation that the golf cart would be insured while it was operated on public roads, as it was at the time of the accident, by relying on the language of the 2002 policy. Plaintiffs claim that because the definition of an "insured location" in the 2002 policy includes "any premises used by you in connection with" the residence premises, the policy provided coverage for use of the golf cart while it was in the alley behind their neighbors' home. Plaintiffs can cite to cases in which courts interpret phrases similar to "any premises used by you in connection with" the residence premises to include ATV trails, private roads and fields adjacent to an insured's property. *See Allstate Ins. Co. v.*

---

[4] The 2002 policy also included an exception to the motor vehicle exclusion for vehicles used to service an insured's residence. As discussed previously, the ordinary meaning of the term "service" does not yield thoughts of recreation. *Tenos*, 716 A.2d at 629. Therefore, Plaintiffs could not have relied on this language to develop a reasonable expectation of coverage for a golf cart used primarily for recreation, involved in accident when being used for recreation.

10

*Drumheller*, 185 Fed. Appx. 152, 158 (3d Cir. 2006); *Uguccioni v. United States Fidelity & Guaranty Co.*, 597 A.2d 149, 150 (Pa. Super. Ct.); *State Farm Fire & Cas. Co. v. MacDonald*, 850 A.2d 707, 711 (Pa. Super. Ct. 2004). In none of those cases, however, were the insureds operating their vehicle on a publicly maintained thoroughfare in a residential area. This Court is inclined to agree with the holding in *Nationwide Mutual Insurance Company v. Gardner*, in which the Court concluded that the term "a premises you use," although broad enough to include a private road, was not broad enough to encompass a public thoroughfare. 79 Pa. D&C 4th 150, 163 (Pa. Com. Pl. 2006).[5] Were such a broad definition of premises applied, the distinction between motor vehicle and homeowner's insurance would be functionally eliminated for the purpose of insuring vehicles not subject to registration.

      Finally, the Court concludes that this case does not feature the misrepresentations or alterations of coverage by an insurer that are necessary to trigger the reasonable expectations doctrine. The doctrine was adopted by Pennsylvania courts in acknowledgment of the imbalance of power and information between insurance companies and their customers. *Bensalem Twp. v. Internat'l Surplus Lines Ins. Co.,* 38 F.3d 1303, 1310 (3d Cir. 1994). Misrepresentations or unilateral changes to a policy by the insurance company can lead to an insured's receiving something other than what the insured believed he or she had purchased. *Id.* at 1312. The reasonable expectations doctrine can provide some relief to consumers when there is a difference between the language of a policy and the extent of the coverage for which the insured reasonably

---

[5] The Court further notes that Plaintiffs' 2002 policy provided an exception for a "motorized land conveyance" that is "[d]esigned for recreational use *off public roads*" (emphasis supplied). Like the court in *Nationwide*, this Court is loathe to ignore this language to determine that State Auto intended to insure a golf cart used in a publicly maintained alley. 79 Pa. D&C 4th at162.

believed he or she had bargained. *Id.* at 1311.

Cases in which courts have applied the reasonable expectations doctrine feature unilateral changes in the scope of coverage made by insurers, or broad discrepancies between the coverage bargained for and the policy received. In *Bensalem Township*, for example, the Third Circuit reversed a dismissal of an insured's complaint when an insurer significantly expanded the scope of "what Township had come to expect as the standard prior litigation clause" in a policy renewal. *Id.* at 1304. The Court of Appeals reasoned that the Township should have the opportunity to develop evidence to determine whether the insurer had changed the policy after the Township committed to renewal, or had misrepresented the potential impact of the change in the policy's language. *Id.* at 1312. Similarly, in *Highlands Insurance Group*, the insurer inserted a "family exclusion" clause into a policy two years after the insured's initial purchase. 2000 U.S. Dist. LEXIS 16008 at *2. Because the insurer had provided inadequate notice of the change to the policyholder, the court upheld a jury verdict that the family exclusion was unenforceable. *Id.* at *23-24.

Finally, in *Tonkovic*, the Pennsylvania Supreme Court applied the reasonable expectations doctrine in directing that judgment be entered in favor of an insured. *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 926 (Pa. 1987). The insured had specifically bargained for coverage that would allow him to make his mortgage payments in the event of an injury, regardless of where that injury took place or whether worker's compensation was available. *Id.* at 921. The insurer issued a policy which excluded coverage for injuries eligible for worker's compensation. *Id.* at 922. The insured received a policy that was significantly different than what he requested; because the insurer did not advise the insured of the change, the

12

Supreme Court affirmed that the insured had a reasonable expectation of coverage. *Id.* at 925. The Court distinguished "between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage....and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Id.* at 925.

This case is easily distinguished from the precedents discussed. For example, here, the reasonable expectations doctrine does not apply because the insurer did not add a new exclusion to Plaintiffs' policy. Unlike the insurers in *Bensalem* and *Highlands*, State Auto did not significantly diminish the coverage available to the insureds through a policy renewal. Instead, State Auto made a single change to the definition of the term "'insured location," which was itself embedded in an exception to an exclusion for "motorized land vehicles" that did not apply to Plaintiffs' golf cart in the first instance.[6] Moreover, there is no evidence that Plaintiffs bargained with State Auto for coverage for the golf cart, or intended to purchase anything other than a standard homeowner's policy. Unlike the insured in *Tonkovic*, Plaintiffs in this case received the policy for which they applied and paid.

Plaintiffs simply could not have developed a reasonable expectation of coverage for their golf cart based on the definition of the term "insured location" as applied in the 2002 policy. Therefore, the Court cannot apply the reasonable expectations doctrine now to conclude that coverage should have existed at the time of the accident. Because the accident was not covered under the policy, State Auto has no duty to defend Plaintiffs. In the absence of a duty to defend,

---

[6] Because the Court concludes that the language at issue had no impact on Plaintiffs' reasonable expectations of coverage, it does not reach the question of whether the notification of the change in language was adequate.

Plaintiffs' claims for bad faith must be dismissed. *The Frog, Switch and Mfgr. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Finally, because the Court concludes that State Auto was permitted to interview family members to determine whether the accident fell within an exception to the motor vehicle exclusion, it also finds that State Auto did not engage in fraudulent or deceptive conduct that would trigger liability under the UTPCPL; Plaintiffs' consumer protection claim must also be dismissed.

    An appropriate Order follows.